UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                           CASE NO. 08-10411

CORY MCKAIN AND                              CHAPTER 13
REGINA MCKAIN                                 SECTION A
     Debtors

## REASONS FOR ORDER REQUIRING ACCOUNTING PROCEDURES

This matter came before the Court on Cory and Regina McKain's ("Debtors") Motion to Enforce Automatic Stay ("Motion to Enforce") (P-10) filed against Ocwen Loan Servicing, LLC ("Ocwen"). The parties have reported a settlement of the Motion to Enforce, however, for the reasons set forth below, this Court will require Ocwen to perform some additional relief measures.

**JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), & (O), 1334, and 11 U.S.C. § 362.

**BACKGROUND**

To purchase a residence located at 424 Holmes Drive, Slidell, Louisiana, Debtors obtained a $136,000 loan from First NLC Financial Services, LLC, d/b/a the Lending Center ("First NLC"). Debtors signed a promissory note, which was secured by a mortgage on the property.

Debtors fell behind in their payments to First NLC, and after a foreclosure was commenced, filed a petition for relief under chapter 13 of the Bankruptcy Code on February 29, 2008. Their plan was confirmed on May 19, 2008. Debtors filed a Motion to Enforce on March 31, 2008, asserting that Ocwen, the servicer of the First NLC loan,[1] sent a monthly billing statement ("Statement") that

---

[1] The loan servicing was assigned to Green Tree Servicing LLC shortly after Ocwen sent the billing statement to which Debtors now object.

violated section 362. The Statement contained the following paragraph:

> Our records indicate that you have filed a Chapter 13 bankruptcy and your loan is in foreclosure. Accordingly, this statement may be for informational purposes only. If this statement does not reflect the terms of your bankruptcy plan, please continue to pay your loan as provided in your plan and contact an Ocwen representative at 888-554-6599 to update our records. Payments received are to be applied in accordance with your mortgage note. Payments will be first applied to bring your loan contractually current. Any additional funds will be applied to outstanding fees and advances prior to being applied to principal.

Debtors complain that the Statement implies that the prepetition foreclosure action filed by Ocwen is active and directs Debtors to contact Ocwen despite the fact they are represented by counsel. The Statement also advises Debtors that Ocwen will apply their plan payments according to its own terms, disregarding the terms of the plan and bankruptcy procedure. Debtors requested sanctions as part of the relief sought.

Ocwen filed a proof of claim, signed by Michele Rice, Bankruptcy Supervisor, on April 3, 2008, asserting a secured claim in the amount of $148,100.74. The note and mortgage granting a security interest to First NLC were attached to the claim; however there was no evidence that the note and mortgage were ever assigned to Ocwen or any other entity.

Debtors' Motion to Enforce was initially heard April 22, 2008. Ocwen failed to appear. The Court continued the hearing to May 27, 2008, and issued a Rule to Appear against Michele Rice. By agreement, Debtors and Ocwen continued the hearing to July 22, 2008. Ocwen filed its Objection to the Motion to Enforce on July 14, 2008, and notified the Court that Michele Rice no longer worked at Ocwen.

At the July 22 hearing, counsel for Debtors objected to the Statement's language and argued that it mislead Debtors into thinking that Ocwen was proceeding with the foreclosure against their home. They also complained that Ocwen was impermissibly attempting to collect fees and costs in

derogation of their plan and the Bankruptcy Code; specifically fees and costs, such as sheriff's commissions,[2] legal fees for postpetition work that the Court had not approved, "contact charges," and "click charge" fees.[3] The Court continued the hearing to August 26, 2008, to allow Ocwen time to address the Court's concerns. On August 26, the hearing was further continued without date to allow Ocwen additional time to obtain the necessary information.

Ocwen filed a Response on October 10, 2008. The Court set a hearing for December 4, 2008, however that hearing was further continued to January 7, 2009, at the request of the parties. The hearing was continued one additional time before the parties appeared before the Court on January 27, 2009, to report that they were negotiating a settlement. The Court continued the hearing to February 17, 2009, to allow the parties time to finalize the terms of the settlement.

The parties appeared on February 17, 2009, after almost a year of hearings and discovery, and reported that they had settled Debtors' Motion to Enforce.

Ocwen's History

This is not the first time Ocwen has appeared before the Court for improperly administering a loan or attempting to collect fees and costs to which it was not entitled. The Court has been involved with six other cases[4] in the last four years where Ocwen either included improper fees in its claim; attempted to collect, post-discharge, fees and costs that were undisclosed but assessed

---

[2] Ocwen frequently includes sheriff commissions on proofs of claim, despite the fact that such commissions are not owed until a property is actually sold by a sheriff's department.

[3] The contact charge fees were later revealed to be charged for "drive by" inspections, while the click charge fees are charged to creditor's counsel for electronically accessing the creditor's loan documents. Ocwen Loan Servicing, LLC's Response to Memorandum to Record, p.9 and Exhibit 4 (October 10, 2008).

[4] It is likely that there are many additional cases where this activity has occurred, but not all debtors' counsel carefully monitor creditors' proofs of claim.

during a bankruptcy; or attempted to foreclose on disallowed or discharged debt. The cases are briefly described:

>02-10630 Mary Wills - The debtor filed a Motion for Sanctions complaining that Ocwen was improperly attempting to collect postpetition arrears that the debtor placed into her plan *via* a *Mendoza* modification. The Court granted the Motion and ruled that the debtor's account was postpetition current. The debtor received a discharge on July 6, 2006. Post-discharge, Ocwen again attempted to collect the *Mendoza* payments as well as additional bankruptcy fees and charges. The Court ordered Ocwen to correct the debtor's account to reflect that she was current, struck the improper fees, and awarded sanctions. Despite this Court's rulings, Ocwen persisted in its attempt to collect the disallowed amounts. Debtor filed a Motion for Contempt, and on November 5, 2007, the parties entered into a stipulation resolving the matter.
>
>03-10398 Jada Taylor Batiste - The debtor received a discharge on July 2, 2008; after Ocwen was paid the full amount reflected on its proof of claim. Shortly after receiving her discharge, Ocwen resumed collection activity for the amounts paid during the debtor's case. Debtor filed a Motion for Sanctions, alleging that Ocwen applied postpetition payments to fees and costs that were assessed during the bankruptcy but not disclosed to the debtor. The parties settled this matter, and the debtor withdrew the Motion for Sanctions on April 28, 2009.
>
>03-18525 Sharon Wise Sam - On July 12, 2007, the debtor filed an Objection to Ocwen's proof of claim contesting unapproved, unitemized, and previously undisclosed postpetition charges. The Court sustained the Objection and entered an Order reducing Ocwen's claim by $2,882.55.
>
>04-19370 Irma B. Curtis - The debtor filed an Objection to Ocwen's proof of claim on March 1, 2005, asserting that a recent account statement indicated that her arrearage was $5,220.90 less than the amount listed in Ocwen's proof of claim. The parties settled the matter on May 17, 2005, and Ocwen amended its claim to remove a claim for $5,179.72 in "Securitized Interest Arrearage" and a $150.00 "POC Fee."
>
>07-11978 Warren K. Barlow and Lisa G. Barlow - The debtors were current with Ocwen on the petition date, however Ocwen filed a proof of claim asserting a $2,543.47 arrearage. The debtors objected to Ocwen's claim on May 13, 2008, and the parties submitted a Consent Order requiring Ocwen to amend its claim to reflect that the debtors were current.
>
>08-10068 Gary A. LaMonte and Sabrina Marie LaMonte - The debtors filed an Objection to Ocwen's proof of claim on April 9, 2008, questioning Ocwen's calculations and alleging that Ocwen improperly added fees and costs to the debtors'

-4-

account. It took Ocwen ten months to supply a legible accounting. The debtors eventually withdrew their Objection after Ocwen removed bankruptcy attorney fees and property inspection fees. The Court awarded the debtors' counsel $1,500 as sanctions for Ocwen's delay in addressing the Objection.

Between the dates of January 1, 2002, and February 17, 2009, Ocwen participated in approximately forty-two Section A cases. The six cases described above, plus the instant case, reflect an error rate of approximately 17%, or one in every six files. It is probable that the above files are not an exhaustive list of cases where Ocwen has inappropriately administered loans, as not all debtor's counsel carefully monitor claims. In each case, the Court required Ocwen to remove fees and correct its payment history. In several of the itemized cases Ocwen continued to demand payment or continued with a foreclosure despite prior payment or court ordered disallowance. In light of this history, Ocwen's statement that the foreclosure case remains active and that the application of payments received will be at its discretion, despite a plan and bankruptcy law to the contrary, is troubling to say the least. The Court does not believe that Ocwen has taken the steps necessary or appropriate to eliminate or correct its pattern of error.

**DISCUSSION**

Chapter 13 bankruptcy is a vehicle for the honest but unfortunate debtor to discharge certain debts through the completion of a payment plan under the protection and supervision of the bankruptcy court.[5] In order to receive distribution under a debtor's payment plan, the creditor must file a written statement setting forth its claim.[6] Except for limited circumstances not applicable here,

---

[5] *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367, 127 S.Ct. 1105, 1107 (2007).

[6] *See,* F.R.Bankr.P. 3001 and 3002.

the claim shall be limited to those debts that are due as of the filing date of the bankruptcy petition.[7]

The petition date institutes the automatic stay under section 362, but it also creates a bright line for determining the amounts that may be collected through a plan of reorganization.[8] This serves a number of important goals. First, it eliminates any possible confusion as to what may be included in a claim. Second, it helps ensure a fair distribution of a debtor's assets.

The claims process helps streamline the administration of a bankruptcy by allowing creditors a *prima facie* claim if they comply with the requirements of Bankruptcy Rule 3001. This policy serves two important functions: first it relieves a creditor from "proving" its claim, eliminating unnecessary expense and time; and second, it provides debtors, interested parties, and the Court with a clear and simple method for determining the claims against the bankruptcy estate. The primary purpose of chapter 13 is to provide a debtor, after completion of his or her plan, with a discharge of any remaining obligations.

Ocwen has consistently shown an inability or refusal to comply with these basic statutory tenets. As a result, discharged debtors have continued to incur the threat of foreclosure and collection of debts that have been discharged or disallowed. Ocwen has failed to disclose the assessment of postpetition charges to others, misleading them into a false sense that a fresh start was theirs to enjoy. The question currently facing the Court is how can it ensure that Ocwen properly identifies and calculates the prepetition debt owed, properly applies the payments it receives, and,

---

[7] *See,* 11 U.S.C. §§ 101(10), 501, and 502(b).

[8] While a creditor is generally prohibited from collecting postpetition fees and costs through the plan, it may be entitled to recover such fees and costs if it files an application, as required by Bankruptcy Rule 2016. *See also, In re Jones* 366 B.R. 584, 594 (Bankr. E.D.La. 2007).

postpetition, properly notifies debtors of any subsequent attorneys fees or charges Ocwen alleges are due?

Authority of Court to Issue Sanctions

The parties agreed to a settlement that resolved the issues raised by Debtors' Motion to Enforce and addressed Debtors' concerns over the amounts claimed on Ocwen's proof of claim. This does not, however, preclude the Court from considering sanctions for Ocwen's systematic abuse of the claims process and bankruptcy system. "It is well established that a federal court may consider collateral issues after an action is no longer pending . . .."[9]

The authority of bankruptcy courts to issue civil sanctions has been clearly settled.[10] The source of that authority comes from the court's inherent authority[11] and from Bankruptcy Code itself, specifically section 105.[12]

---

[9] *Ratliff v. Stewart*, 508 F.3d 225, 230 (5th Cir. 2007), *quoting Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 2456, L.Ed.2d 359 (1990); *see also Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 451 31 S.Ct. 492 , 502, 55 L.Ed. 797 (1911)(noting that court had power to punish for contempt after parties completely settled all matters involved in the case).

[10] *Matter of Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609 (5th Cir. 1997); *see also, In re Hardy*, 97 F.3d 1384 (11th Cir. 1996); *In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996); *In re Power Recovery Systems, Inc.*, 950 F.2d 798 (1st Cir. 1991); *In re Skinner*, 917 F.2d 444 (10th Cir. 1990); *In re Walters*, 868 F.2d 665 (4th Cir. 1989); and *In re Sanchez*, 372 B.R. 289 (Bankr. S.D.Tex. 2007).

[11] *See, e.g., In re Yorkshire LLC,* 540 F.3d 328 (5th Cir. 2008)(affirming the inherent authority of the bankruptcy court).

[12] *Terrebonne,* 108 F.3d at 613.

One of the key functions of § 105(a) is to "prevent an abuse of process."[13] "Abuse of process" is not defined by the Bankruptcy Code. The Restatement (Second) of Torts defines it as "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."[14] Some bankruptcy courts have simply stated that abuse of process consists of "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system."[15]

Bankruptcy courts also have an inherent authority to sanction parties and control their courts, beyond that set forth by § 105(a).[16] "It is well-settled that a federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct."[17] It is also established that "Courts of justice are universally acknowledged to be vested, by their very creation, with power

---

[13] Section 105(a) provides that:

The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[14] Restatement (Second) of Torts § 682 (1977).

[15] *In re Eagle-Picher Industries*, *Inc.,* 169 B.R. 135, 138 n.1 (Bankr. S.D.Ohio 1994); *see also In re Burrell*, 148 B.R. 820, 824 (Bankr. E.D.Va. 1992) (defining abuse of process as situation where inaction by the court "would undermine the integrity of the bankruptcy system.").

[16] *See, e.g., In re Yorkshire LLC,* 540 F.3d 328 (5th Cir. 2008).

[17] *Id*. at 332.

to impose silence, respect, and decorum in their presence and submission to their lawful mandates."[18] This inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[19]

Sanctions against Ocwen are appropriate for a number of reasons. As demonstrated above, Ocwen has repeatedly abused the claims process and failed to honor the discharge injunction by attempting to collect from debtors and their bankruptcy estate disallowed or undisclosed debts. The Court finds that this practice is in bad faith and requires greater regulation of Ocwen's behavior to curtail further abuse of the bankruptcy system. The record reflects that this is an ongoing pattern that imposes a burden on debtors and the Court to monitor Ocwen's claims and pleadings. The Court has repeatedly struck improper charges and has issued monetary sanctions against Ocwen. Ocwen's continuing disregard for bankruptcy law and procedure is a clear indication that monetary sanctions are simply ineffective. For these reasons, the Court will require Ocwen to institute the following accounting procedures:

> 1. Upon the filing of a chapter 13 bankruptcy petition, the amounts outstanding on a debtor's loan will be divided into two new, internal administrative accounts. The first account will contain the sums to be paid under debtor's plan by the Chapter 13 Trustee; typically the prepetition past due amounts including past due interest, costs, charges, and fees ("Account One").[20] The opening balance on Account

---

[18] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991)(citations omitted).

[19] *Id.*

[20] Account One should not contain any estimated charges, for example, unpaid escrow charges on past due monthly installments. It should only contain actual deficiencies in payment. Ocwen may elect to carry a positive escrow balance existing on the petition date in Account Two rather than Account One in order to assist debtor's with the amortization of future property tax and insurance expenditures. If this practice is elected, it shall be noted on the proof of claim

One should directly correlate to the amounts reflected on Ocwen's proof of claim. Account One will also include any amounts added by subsequent court order to the plan for payment by the Trustee during the case's administration. All payments made by the Trustee will be applied to the reduction of the amounts owed on Account One.

The second account will reflect the principal amount due on the petition date[21] ("Account Two"). No other sums should be owed on Account Two at the start of the case. Account Two will include postpetition interest accrual, postpetition property insurance or property tax expenditures, and other court authorized postpetition charges as provided in paragraph 2 below.[22] A debtor's regular monthly note payments will be posted to this account, reducing postpetition interest accrual, postpetition property and tax expenditures, and principal. The account's first posting will typically be the first installment payment due on the loan following the petition date.

Ocwen may maintain, postpetition, its customary records on the loan provided that the two new internal accounts shall control the loan's administration during the pendency of the case.

2. With the exception of postpetition property taxes and property insurance expenditures, Ocwen may provisionally accrue, but not assess or collect, any postpetition charges, fees, costs, etc.[23] allowed by the note, security agreement and state law. Postpetition property tax and insurance expenditures may be assessed against debtor's account and collected after the delivery of a ten day written notice to debtor, debtor's counsel, and the Trustee. The assessment and collection of expenditures for postpetition property insurance and taxes will not require approval of the bankruptcy court unless a written objection is filed within 10 days of the notice of assessment and collection. If authorized by Ocwen's note, security agreement, and state law, the collection of amounts necessary to pay postpetition

---

filed by Ocwen.

[21] If the proof of claim includes all past due installment payments, the principal amount reflected in Account Two must be adjusted downward to accommodate the anticipated principal payments being made through the plan. Alternatively, the past due installments reflected in the proof of claim can be adjusted to eliminate principal. If this opinion is chosen, disclosure as to how this will affect the future amortization of debtor's loan must be provided.

[22] The posting of postpetition charges is constrained by the provisions of paragraph 2 which follows.

[23] Court approved postpetition charges other than postpetition interest, property tax or insurance expenditures will hereafter be referred to as "Postpetition Charges."

-10-

insurance and property tax expenditures may be made in advance through the use of escrow accounts. If escrows are utilized, Ocwen must give a written accounting of the amounts collected at the time it seeks to apply the escrowed funds to payment of the insurance or property tax expenditures.

As to postpetition charges, annually, between January 1 and February 28 of each year during a case's administration, Ocwen shall file with the Court and serve upon the debtor, debtor's counsel, and the Trustee, notice of any postpetition charges (which do not include property taxes or insurance), accrued in the preceding calendar year. The notice shall contain an itemization describing the charge, amount provisionally incurred, the date incurred, and if relevant, the name of the third party to whom the charge was paid. The notice will also provide a direct reference to the provisions of the note, security agreement, or state law under which Ocwen asserts its authority to assess each type of charge.

The notice shall contain a statement to the effect that debtor may elect to add the charges to his plan with approval of the bankruptcy court, satisfy the charges directly outside the plan, or defer repayment until the conclusion of his case.

Thirty days after giving notice of the postpetition charges, Ocwen may request, by *ex parte* order, authority to assess the postpetition charges set forth in its notice. However, Ocwen may not collect on any Postpetition Charges unless the debtor voluntarily delivers payment separate and above from that due as a regular monthly installment or obtains approval of the court to modify the plan and satisfy the amounts due through periodic payments by the Trustee. If the Postpetition Charges are to be paid through the modified plan, they will be added to Account One and satisfied by the Trustee. If to be paid by the debtor, they may be added to Account Two.

If no provision for payment is made by a debtor, the collection of the Postpetition Charges must be deferred until the close of the case or relief from the stay is obtained.

3. If Ocwen does not issue a notice of postpetition charges, in accordance with paragraph 2, for any given year of the case's administration, then Ocwen shall be prohibited from collecting or assessing any charges accrued against the debtor for that year and shall treat the debtor as fully current at the time of discharge.

4. Upon the issuance of a discharge, Ocwen shall adjust its permanent records to reflect the current nature of debtor's account. Provided however, that if debtor elected to defer the payment of approved Postpetition Charges until the conclusion of the case's administration, then Ocwen shall be authorized to collect said sums in accordance with the provisions of its note, security instrument, and state law.

The accounting procedures ordered by this Court serve a number of functions. First, they ensure that Ocwen is not abusing the claims process. Second, they allow debtors and their counsel notice of incurred postpetition fees or costs. Third, the audits are narrowly tailored to regulate only the claims process. As such, they are designed to effect the least severe means available to quell the offensive behavior.[24] Finally, they are rehabilitative and educational in character because they will expose defects in the claims on file and will provide Ocwen with the opportunity to correct its own errors.

Injunctive Relief

The sanctions issued against Ocwen constitute injunctive relief because they direct Ocwen to take certain actions.[25] It is clear that this Court has the authority to issue an injunction;[26] therefore, the remaining issue is whether such relief should be implemented against Ocwen.

Several Fifth Circuit opinions hold that the traditional standards for injunctive relief (*i.e.* irreparable injury and inadequate remedy at law) are inapplicable to injunctions issued to protect a court's inherent jurisdiction and to control its docket.[27] Where monetary sanctions are ineffective in deterring vexatious filings, injunctions are appropriate. The court's power to enter such orders flows not only from various statutes and rules relating to sanctions, but the inherent power of the

---

[24] *See, Natural Gas Pipeline Co. of America v. Energy Gathering Inc.,* 86 F.3d 464, 467 (5th Cir. 1996) and *Thomas v. Capital Sec. Services, Inc.*, 836 F2d 866, 877 (5th Cir. 1988).

[25] *Wells Fargo v. Jones*, 391 B.R. 577, 609 (E.D.La. 2008).

[26] *Wells Fargo v. Jones*, 391 B.R. 577, 609 (E.D.La. 2008), *citing Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago R.I. & P. Ry. Co.,* 294 U.S. 648, 675, 55 S.Ct. 595, 79 L.Ed. 110 (1935).

[27] *Baum v. Blue Moon Ventures, L.L.C.*, 513 F.3d 181 (5th Cir. 2008); *Ferguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

court to protect its jurisdiction, its judgments, and to control its docket.[28]

In determining the propriety of a sanction in the form of injunctive relief, a Court considers the party's history of litigation, whether or not it has a good faith basis for pursuing the litigation, the extent of the burden on the court and other parties resulting from the party's filings, and the adequacy of alternative sanctions.[29] As explained above, Ocwen has consistently failed to properly apply payments received in a case's administration, failed to honor the automatic stay or discharge injunction, and failed to notify debtors of accrued postpetition debts. This practice has increased the burden on the Court and debtors. The Court has previously sanctioned Ocwen for its behavior and does not believe that further monetary sanctions will inspire Ocwen to change its practices. As such, the Court does not believe that there is any other adequate legal remedy.

Because an appeal is now pending in a related case based on application of the appropriate standard for the form of relief, the Court will also apply the traditional four part test, which requires a party establish:[30]

> (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.[31]

---

[28] *Farguson,* 808 F.2d at 359. The Fifth Circuit confirmed that this inherent power also resides with bankruptcy courts for bad faith conduct occurring in proceedings before them. *Citizens Bank & Trust Co. v. Case*, 937 F.2d 1014 (5th Cir. 1991).

[29] *Blue Moon Ventures,* 513 F.3d at 189.

[30] The Court does not however, as stated in *In re Stewart*, 2008 WL 5096011 (Bankr. E.D.La. 2008), believe that this test is appropriate.

[31] *Jones v. Wells Fargo* 391 B.R. at 609, *quoting VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).

The above factors are typically applied when one party is requesting injunctive relief against another party and do not easily translate where it is the court that is seeking to prevent harm. Nevertheless, for the sake of completeness, the Court will address each factor below.

Success on the Merits. For the reasons set forth above, the Court finds that the injunction is an appropriate remedy and that it is unlikely that an appellate court would overturn this Court's ruling.

Irreparable Injury. The Court finds that failure to institute the accounting procedures will result in Ocwen continuing to pursue claims ate incorrect, disallowed, or discharged. Despite multiple warnings, the Court continues to receive complaints against Ocwen on a regular basis for egregious breaches of the automatic stay or discharge injunction. No adequate remedy exists at law to stop this abuse.

Damage to Ocwen. The burden on Ocwen to comply with the annual accounting procedures is minimal, and is clearly eclipsed by the injury that a debtor would suffer if his or her residence were improperly foreclosed upon. In fact, the burden of issuing an annual accounting is less than what would ordinarily be required of Ocwen under Bankruptcy Rule 2016.

Public Interest. The accounting procedures serve the public interest because they require Ocwen to disclose postpetition fees and costs that have accrued against debtors' accounts. This gives debtors the opportunity to ascertain whether the fees or costs are justified. Additionally, once apprised that they are incurring postpetition charges, debtors will be encouraged to make timely payments to prevent the assessment of future charges. Finally, once apprised of any postpetition fees, debtors may pay the charges to ensure that they are current upon discharge.

**CONCLUSION**

Ocwen has a clear pattern of abusing the claims process by ignoring the discharge injunction or attempting to collect undisclosed debts. This Court has repeatedly stricken Ocwen's fees and costs, and has imposed sanctions. Ocwen's continuing violations and disregard for bankruptcy procedure makes it clear that additional action by the Court is necessary. It is for these reasons that the Court will require Ocwen to institute the accounting procedures set forth above. An Order consistent with these reasons will be rendered separately.

New Orleans, Louisiana, May 1, 2009.

Hon. Elizabeth W. Magner<br>
U.S. Bankruptcy Judge